# CHARLESTON.

## WARD v. MEDLEY.

### Submitted October 2, 1917. Decided October 9, 1917.

1. BOUNDARIES—*Evidence—Map.*

    In a controversy concerning the location of the dividing line between adjoining city lots, a copy of the original map of the block of lots and adjacent streets and alleys does not, of itself, prove the location of the line, when, tested by the scale on which it was made, it appears that such map is not strictly accurate, and by other evidence in the case that one of the streets bounding the block, in which said lots are located, has been widened since the original survey was made, so as to include a strip off said block. (p. 27).

2. ADVERSE POSSESSION—*Boundary Line—Sufficiency of Evidence.*

    Where, in such controversy, one of the parties relies upon paper title and adverse possession, it is not indispensable that he should

    81 W. Va.

have had his entire lot enclosed by fence. A fence along a portion of the dividing line, which is admittedly a straight one, marking the extent of his claim, the erection and use of a barn on the lot, and other continuous and visible acts exercised thereon for a period of ten years, to the exclusion of all others, clearly indicating his claim to the entire lot, are sufficient evidence of adverse possession of the whole. (p. 31).

Error to Circuit Court, Kanawha County.

Ejectment by Harold M. Ward against George Medley. From an order of the circuit court refusing a writ of error to a judgment for defendant rendered by the common pleas court, plaintiff brings error.

*Order affirmed.*

*Murray Briggs,* for plaintiff in error.

WILLIAMS, JUDGE:

By this writ of error plaintiff seeks to reverse an order of the circuit court of Kanawha county refusing a writ of error to a judgment for defendant, rendered in an action of ejectment by the common pleas court of said county.

J. Brisben Walker, being the owner of a tract of land, laid it off into building lots, streets and alleys, and caused a map thereof to be made and recorded in the clerk's office of the county court of Kanawha county. He and others then formed a joint stock association, known as the Western Charleston Extension Company, for which he declared he held the title to the property in trust. The map is described as, "The Proposed Addition to the City of Charleston." Lots 6 and 7 in Block 8 of that map are the lots here involved, defendant owning lot 6 and plaintiff lot 7. Lot 7 was conveyed by said Walker, trustee, to William Thompson in 1873, the deed describing it by the number of the lot and block, as shown by said map, also, as fronting "forty feet on Virginia Avenue and running back one hundred and sixty feet to an alley." Virginia Avenue has since been renamed Tennessee Avenue. Said Thompson and wife conveyed the lot to Charles Ward in 1874. He has since died, and the title, which descended to his heirs, is now vested in his son Harold M. Ward, the plaintiff.

Defendant acquired title to lot 6 in Block 8 by deed from R. R. Dawson, dated the 17th of January, 1901. Said Dawson had previously purchased it at a sheriff's sale, made in December, 1899, for taxes delinquent thereon for the years 1897-8 in the name of Lucy A. Medley, the mother of defendant, and obtained a deed therefor from the clerk of the county court. Mrs. Medley had acquired title to the lot from the Kanawha Valley Bank which had purchased it, together with a large number of other Walker lots, at a judicial sale made in the suit of Jas. M. Payne, Administrator d. b. n. of James L. Carr, deceased, vs. J. Brisben Walker and others, and had received a deed therefor from the special commissioner of the court. None of the deeds mention the width of this lot on Tennessee Avenue, but it is admitted that all the lots fronting on Tennessee Avenue, in Block 8, except lot 1, were originally laid off with a frontage of forty feet. Plaintiff contends that lot 1 was laid off only thirty feet wide.

Two questions of fact were presented to the jury. First, what is the true location of the dividing line between lots 6 and 7; and second, defendant's claim of adverse possession of lot 6 to the line claimed by him. Plaintiff's counsel insists that the evidence is conclusive to establish the dividing line between lots 6 and 7 on the location claimed by plaintiff, and that the evidence respecting adversary possession by defendant is not sufficient to support the verdict in his favor. The only evidence plaintiff offered to prove the location of the disputed line is a copy of the Walker map of the proposed addition to the City of Charleston and the testimony of engineers that the width of lot 1 in Block 8 was only thirty feet, whereas the width of the nine remaining lots in that block, fronting on Tennessee Avenue, were each forty feet, as ascertained by applying the scale to the map, and that the line along the front of all the ten lots, ascertained in the same way, was only three hundred and ninety feet. There are eleven lots in that tier of lots in Block 8, but lot 11 lies along Charleston Street and is triangular, having its apex at the intersection of Charleston Street and Tennessee Avenue, and hence adds nothing to the sum total of the width of all the lots. From these facts, thus ascertained, the theory

of plaintiff seems to be, that by allowing forty feet instead of thirty as the width of lot 1, which lies at the corner of Fayette Street and Tennessee Avenue, the lines of all the remaining lots have been shoved over toward Charleston Street a distance of ten feet. It appears from the report of Wm. P. Hogue, who made a survey in obedience to an order of the court entered in this cause, which counsel have agreed might be read and considered as evidence, together with the maps filed therewith, without his testimony, he being a member of the National Guard and then absent in the service of the United States. The maps which are frequently spoken of in the testimony have not been brought up with the record. Said Hogue reports that he began at a stone corner at the curb line of Fayette Street and Tennessee Avenue and measured along the curb line of Tennessee Avenue to its intersection with Charleston Street, first laying off ten feet for the sidewalk, then thirty feet to a point opposite the corner between lots 1 and 2, as claimed by plaintiff; thence continuing and allowing forty feet for each one of the remaining lots from 2 to 10, both inclusive, he says the *sixth* forty foot measurement brought him to a point opposite a fence, now standing between lots 7 and 8, shown by the red line on his map. This map is not before us, but this fence is evidently the one testified to by witness Myers. The ninth forty foot measurement, which represents the frontage of lot 10, when reoffset to the property line, he says, lacked 1.2 feet of reaching the present building line on Charleston Street, as shown on his map. This surveying he did at the request of the plaintiff. He reports that he then measured along the same curb line from the same point, at the request of the defendant, allowing ten feet for the sidewalk on Fayette Street, and forty, instead of thirty feet for lot 1, and forty feet for each of the remaining nine lots, and that the *tenth* forty foot measurement, when reoffset to the property line, carried him 8.8 feet beyond the present building line of Charleston Street. These measurements prove, of course, that the distance between Charleston and Fayette streets, as they are now located, lacks 8.8 feet of making ten forty foot lots, and, allowing only thirty feet for lot 1, and forty feet for each

of the others, it is 1.2 feet too long. But they do not prove that the location of the dividing line between 6 and 7, as it is claimed by plaintiff, is correct.

Plaintiff did not attempt to prove, by any other means, the location of any of the lines dividing the lots, as they were actually made on the ground at the time the land was laid off, if any such lines were then so made. Copies of other maps of the same addition to Charleston, or at least of such parts of it as included the lots in Block 8 and the streets surrounding that block, and other blocks in its vicinity, made from the records of the clerk's office, were also filed as evidence. From them it appears that all of the lots fronting on Tennessee Avenue, in Block 8, from lot 1 to 10, both inclusive, scale about forty feet in width. No witness has undertaken to say that the street lines, as now located, are exactly where they were represented on the original Walker map to be. On the contrary, there is a good deal of testimony to prove that the property line along Charleston Street has been moved back several feet, by consent of the property owners, since that map was made, in order to make the street wider. George Ort and others acquired title to parts of lots 9, 10 and 11, by deed from Jonathan Edens and wife, in September, 1898. That deed conveyed sixty-five feet off the eastern end of those lots, and describes the closing line as running eighty-seven feet along Virginia Avenue (now Tennessee Avenue) to its junction with Charleston Street. Lot 11 being a triangular lot and having its apex at the junction of Tennessee Avenue and Charleston Street would add nothing to the length of that line, so that, it extends seven feet beyond the dividing line between lots 8 and 9, if lots 9 and 10 have a frontage of only forty feet each, and Charleston Street is located as shown on the map. Mr. Ort testifies that he and his sister erected a three story brick building on the ground conveyed to them, fronting on Charleston Street and extending it back along the property line on Tennessee Avenue a distance of eighty feet. But before they built, he says, the sidewalk was only six or seven feet wide on Charleston Street, and they moved their property line back either four or six feet, he does not remember which, and donated that much of their ground

to the city in order to get a wider sidewalk in front of their building. There is also evidence that the other property owners on Charleston Street did likewise, for, he says, all the other property along Charleston Street, standing on lots 9, 10 and 11, are on a line with his. This evidence tends to prove that, as the streets were originally laid off, there was a surplus of land, from five to seven feet, between Fayette and Charleston streets, if lot 1 was laid off as only a thirty foot lot and the others as forty foot lots. Moreover, tested by the scale, it appears that some of the lots, which are admitted to have been intended as forty foot lots, are only thirty-nine feet, while others scale as much as forty-one feet. This only shows that the map can not be relied on as being sufficiently accurate to prove the exact location on the ground of the line between lots 6 and 7, as it is claimed by either party.

The fence which the surveyor reports as standing on the line between lot 7 and lot 8 is one of the lines for which plaintiff contends, and the other parallel line of his lot would be forty feet away from it, which would locate it over on lot 6, according to defendant's contention. It is proven that the fence has been there for twenty years. It is claimed as a line of lot 8 by Mr. E. A. Myers who now owns that lot. Mr. Myers testified that, some five or six years before the trial of this action, he wanted to ascertain the exact location of the line between lots 7 and 8, that he wanted to put up a building on his lot and requested Mr. Charles Ward, father of plaintiff and then the owner of lot 7, to come and assist him in locating the line; that Mr. Ward came, bringing a young man with him, and they measured the front of lots 7 and 8 along Tennessee Avenue with a steel tape, and Mr. Ward told him not to build on the line where his fence was and said, "that is not your property. Your property runs up here about six feet," that is, six feet over on lot 9, as claimed by Mr. Ort. He further states that, after Mr. Ward had taken the measurements, he made a mark with a pencil on the brick wall of the Ort building, about two or three feet from the corner of it, and said that that was the point to which his (Myers) line came, and that the Ort building had

been crowded over on the other property.  Mr. Ward then
drove a stake, he says, at the corner of lots 7 and 8, at a
point six or seven feet over on lot 8, according to its location
as shown by the fence dividing it from lot 7, and told him
that lots 7 and 8 were both forty foot lots.  The location of
the line thus designated by Mr. Ward, would locate the line
between lots 6 and 7 in the place contended for by defendant,
because lots 6, 7 and 8 are all admittedly forty foot lots.  The
court, however, properly instructed the jury that, if they
believed Mr. Ward was mistaken concerning the true loca-
tion of his line, plaintiff would not be bound by his state-
ments as to the line.  But it is by no means certain that he
was mistaken.  So far as the record discloses he was just
as competent to locate the line as any witness in the case.
Plaintiff had the burden of establishing his line, and it can
not be said that the jury's finding, if it was based on the evi-
dence respecting the location of the line, was not warranted
by the evidence.

It not appearing whether the jury rested their verdict on
the evidence concerning the boundary line, or on defendant's
evidence of adversary possession, it is necessary to determine
whether there is sufficient evidence to justify their finding
on the latter as well as the former ground.  Defendant did
not have his entire lot enclosed by fence for a period of ten
years prior to the bringing of this suit.  He testified that his
tenants have occupied it since he got title in 1901; that there
was a fence on the back end of the lot on a line between it and
lot 7, which extended thirty or forty feet toward Tennes-
see Avenue; that there was an old frame building on the
back end of the lot, built close to the fence, which Mrs.
Clark occupied by his permission, until he erected a new barn
to take its place; that a portion of the lot was fenced and
gardened for several years; that after he built the barn he
rented it and the lot to his brother who kept horses and
wagons on it, using it as a storage place for vehicles and as
a place for buying, selling and trading horses; that when his
brother left it, he rented it to a telephone company for a stor-
age place for its poles, cross-arms, reels, etc.; that the tele-
phone company occupied it for two years under an oral lease

and then for three years under lease in writing, which latter lease expired only a month or two before the trial of this case. The surface of the lot was low, and he says he hauled earth and filled it up to the line of lot 7, even covering up some of the old fence posts that stood along in the line; that sometime shortly before this suit, he built a fence along on the same line where the old fence had previously stood. This testimony is not contradicted, and proves adverse possession. Such use and occupancy of the lot, considered in conection with the fact that it, as well as the lots on either side of it, were forty foot lots, and the existence of an old fence along a part of the line between it and lot 7, for a distance of thirty or forty feet, which was known to be a straight line on to Tennessee Avenue, was sufficiently visible and notorious to indicate that the occupant claimed the entire lot. The old fence marked the division line between the lots and the street in front and alley at the back so marked his boundary that anyone seeing him occupying the building on the lot would know that his occupancy extended to the whole of the lot, if no one else was in actual possession of some other part of it, and the evidence shows there was no occupancy adverse to him. Following our decision in the somewhat similar case of *Lyons* v. *Fairmont Realty Co.*, 71 W. Va. 754, we think the evidence proves adverse possession, and justified the giving of defendant's instruction No. 2, of which plaintiff complains. That instruction told the jury to find for defendant, if they believed from the evidence he had been in actual, notorious, visible, exclusive, hostile, and continuous adverse possession of the lot of land claimed by him for more than ten years prior to September, 1915, when the suit was brought.

Plaintiff also complains of the admission of two certain maps as evidence, on the alleged ground that they were not sufficiently authenticated to entitle them to consideration. It is not necessary to decide this point, for it is apparent that plaintiff was not prejudiced by admitting the maps, even if it was error to admit them. Plaintiff's counsel practically admits as much in his brief, wherein he says, concerning the maps, that "taken in connection with the deeds in evidence and the testimony of the surveyors, (they) may be

fairly considered to support, rather than as tending to over-throw the plaintiff's contention."

The admission of evidence concerning the location of old fence lines along Charleston Street was proper. It was a circumstance tending to prove that the location of the property line along that street had been moved back from where it was first located. It tends to corroborate witness Ort, and no witness denies that they did move their property line back in order to give more room for a sidewalk.

The order of the circuit court of Kanawha county refusing a writ of error is affirmed.

*Order affirmed.*